UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Gerald Caldwell, | § | CIVIL ACTION NO. |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| KHOU-TV and Gannett Co., Inc., | § | |
| Defendants | § | A JURY IS DEMANDED |

**Plaintiff's Original Complaint**

If the defendants had judged Mr. Cadlwell on his abilities after 18 years of service, he would still be working at KHOU-TV. But that did not happen. Instead, shortly before a scheduled surgery for a serious disability, the defendants fired this employee it had praised for his tremendous work ethic and creativity. In order to do so, they accused him of shirking duties that he had specifically been told not to handle. They let their negative assumptions, rather than Mr. Caldwell's abilities, carry the day.

PARTIES

1.     The plaintiff is an individual who resides in Houston, Harris County, Texas.

2.     The defendant KHOU-TV is a Delaware corporation that may be served by serving its registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

3.     The defendant Gannett Co, Inc., is a Delaware corporation that may be served by serving its registered agent, The Corporation Trust Co., 1209 Orange Street, Wilmington, DE 19801.

## JURISDICTION

4. This case is brought under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. and the Family and Medical Leave Act, 29 U.S.C § 2601 et seq. This Court has jurisdiction of this case according to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

5. Venue is invoked pursuant to 28 U.S.C. § 1391.

## STATEMENT OF THE PLAINTIFFS' CASE

6. Mr. Caldwell is a video editor who worked productively for KHOU in that capacity for more than 18 years. He took his job seriously and was recognized for his excellent work. Mr. Caldwell repeatedly received praise for his excellent work from his boss, chief editor Rob Kell, for the consistent way in which he prioritized his work and got the job done right. On average, he was doing the work of two editors. And it was not just in the volume of his work that he exceeded a number of his colleagues. It was also his "close attention to detail" and the way he added "special touches" to his finished product. He values quality work and worked hard to produce it.

7. Mr. Caldwell also had a disability, which was a visible one. It resulted from bone cancer he suffered as a child. Over the past six years, he had a number of painful medical procedures in an attempt to save his leg from amputation and reconstruct his hip, femur and knee. At the time he was dismissed, Mr. Caldwell needed only one more surgical procedure to repair the bone damage he had suffered, but it was a crucial surgery as his leg bones were at that point in two pieces with no knee or support rod holding them together. In April 2014, he had informed both his supervisor and HR that he would need leave in the coming weeks for the upcoming

surgery on his leg and told them he would advise them of the specific date as soon as he received it from his surgeon.

8. Before he could get that surgery, Mr. Caldwell was told, on April 28, 2014, that he was losing his job because his position had been "eliminated" in a restructuring. He was told nothing more. And the fact that his job was eliminated was not really accurate since seven people are working as video editors today. It is more accurate to say that *a* video editing position was eliminated and the organization chose to dismiss him even though his last review acknowledged that he had a "tremendous work ethic."

9. Ironically, Mr. Caldwell lost his job while less dedicated workers kept theirs. Of course, they did not have any disability or need leave time for surgery. One editor spent hours shopping on-line, paying personal bills, and posting on Facebook, and he did not make the slightest effort to hide it. Indeed, it was his regular practice to say that he was "initiating work" about an hour and a half into his shift, sometimes later. And, while he was the most open about this, he was hardly alone. Other co-workers came into work extremely late frequently and did not produce anywhere near the volume of work Mr. Caldwell produced. However, KHOU chose to retain these individuals and dismiss Mr. Caldwell – the person with the disability.

10. Subsequent to his termination, the defendants claimed that Mr. Caldwell was selected for termination because he refused to train and work in a system called EDR that brought in feeds from a number of locations and stations, but that is false. Indeed, the EDR system has been at the station for years and Mr. Caldwell worked in it over the years quite easily. But, after he returned to work with his leg in an Ilizarov external fixator in 2008, his supervisor decided that this was not conducive to working in EDR. The choice was made not to assign him those duties

3

until his leg reconstruction was finished, because the work in EDR required a lot of moving around and getting up and down in a room that was often cluttered with equipment.  When a new supervisor took over, he advised Mr. Caldwell that he would continue this arrangement until Mr. Caldwell's leg reconstruction was completed.  Mr. Caldwell never asked for that and would have been happy to do the EDR work, just as he had previously.  EDR is not some technological system that he refused to learn, it was simply a system to which his employer chose not to assign him. And, rather than shirking work, as the defendants claim, he actively sought it out and was sometimes criticized by his colleagues for working too hard.

11. Mr. Caldwell filed a charge of discrimination with the EEOC to challenge the disability discrimination he faced.  He now timely files his lawsuit after receiving a right-to-sue letter from the EEOC.

## DISABILITY DISCRIMINATION

12. The plaintiff is a qualified individual with a disability.  The plaintiff performed his job well, but lost it because of his disability, which is an actual disability under the Americans with Disabilities Act.  In addition, Mr. Caldwell was regarded as having a disability by the defendants and was discharged as a result.

## VIOLATION OF FAMILY AND MEDICAL LEAVE ACT

13. One reason that the Family and Medical Leave Act was enacted was to protect people facing serious medical conditions from dismissal when they needed time off to deal with their medical issues.  Mr. Caldwell qualified for and was entitled to FMLA leave.  Because the defendants fired Mr. Caldwell shortly after he had announced the need for FMLA leave for

surgery, it preemptively fired him in bad faith to deny him that leave. This clearly interfered with Mr. Caldwell's right to leave and thus violates the FMLA.

## DAMAGES

14. The damages suffered by the plaintiff include lost wages and benefits as well as compensatory damages for the injuries suffered at the hands of the defendant, including, but not limited to, mental anguish.

15. Further, the plaintiff seeks an award of exemplary damages for his ADA claim because the defendant's actions were of the sort that render the imposition of exemplary damages appropriate,

16. And, because the defendant's actions were willful and thus render the imposition of liquidated damages appropriate, the plaintiff is entitled to an award of these damages under the FMLA.

## RELIEF REQUESTED

The plaintiff asks this court to enter a judgment:

1. Declaring that the acts and practices complained of in this Complaint are in violation of the Americans with Disabilities Act and the Family and Medical Leave Act;

2. Enjoining and permanently restraining these violations of law;

3. Directing the defendant to pay the plaintiff actual and compensatory damages that he suffered, past and future;

4. Ordering that the plaintiff be reinstated or, in the alternative, awarded front pay;

5. Directing the defendant to pay plaintiff exemplary damages for its conduct in an amount as yet to be ascertained;

6. Directing the defendant to pay plaintiff liquidated damages for its conduct in an amount as yet to be ascertained;

7. Awarding plaintiff pre-judgment interest on the amounts owed at the maximum rate allowed by law;

8. Awarding plaintiff the costs of this action, together with reasonable attorneys' fees and expert witness fees;

9. Awarding plaintiff post-judgment interest on the amount of judgment until paid at the maximum rate allowed by law; and

10. Awarding plaintiff such other relief, legal or equitable, as may be warranted.

Respectfully submitted,

s/ Katherine L. Butler *
Federal I.D. No. 4734
State Bar No. 03526300
Paul R. Harris
Federal I.D. No. 897365
State Bar No. 24059905
1007 Heights Boulevard
Houston, Texas  77008
(713) 526-5677
Fax (888) 370-5038

**\*Attorney in charge for Plaintiff**